UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARY JANE BEAUREGARD and JOHN HUGH SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>CLAYTON SAMPSON, et al.,<br><br>Defendants. | Case No. 2:20-cv-02123-KJD-DJA<br><br>**ORDER** |

After a three-day bench trial, the Court ruled in Plaintiffs' favor on their claims of breach of contract, common law securities fraud, securities fraud under NRS § 90.570, and breach of the implied covenant of good faith and fair dealing. (#140, at 17). However, before the Court could issue a final damages judgment, it requested supplemental briefing. See id. at 17-18. Specifically, the Court ordered three actions: (1) Plaintiffs shall file a new damages summary, (2) a motion for attorneys' fees and costs, and (3) Defendants shall produce a full accounting of all corporate and personal financial records related to EnvyTV, EnvySolutions, EnvyCares, EnvyConnect, EnvySocial, and EnvyCrypto. Id. After reviewing all submitted documents, the Court finds that Plaintiffs are entitled to a total monetary award of 810,445.47, with the additional punitive damage amount to be assessed at a forthcoming hearing.

I. Analysis

**A. Attorneys' Fees, Interest, and Costs – NRS 90.660**

In the Court's January 31, 2024, Order, it held that Plaintiffs are entitled to reasonable attorneys' fees and costs and directed that supplementary briefing be provided to determine the correct amount. Id. at 17. Plaintiffs have since submitted the requested information, claiming entitlement to $301,103.75 in attorneys' fees and $15,679.13. in costs. (#142, at 6). Defendants argue that attorney fees and costs are not warranted in this case and present several arguments to support their position. (See #152). Specifically, Defendants argue: (1) that the December 13, 2018, email is not a security, (2) that any damage award should be reduced by the amount of

income received on the security, (3) that the attorneys' fees are excessive, and (4) that the Court should exercise its discretion not to award costs. Id.

As an initial matter, the Court notes that, despite its prior ruling, a substantial portion of Defendants' response is devoted to disputing whether securities fraud, the basis for awarding attorney fees, occurred in this case. See id. at 9-15 ("The issue of the appropriate attorney's fee award, however, is outstanding and that question requires examination of whether securities fraud occurred. It did not."). Among these arguments, Defendants assert that the December 13, 2018, email is not actually a security. See id. The Court outright rejects this argument, as its prior Order clarified how the contractual ownership interest in EnvyTV is considered a security under Section 90.295 of the Nevada Revised Statutes ("NRS"). (See #140, at 8, 10). Therefore, the Court disregards any arguments concerning the merits of its prior Order and focuses its remaining analysis on determining the appropriate amount of damages to award.

"A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." Kona Enterprises, Inc. v. Est. of Bishop, 229 F.3d 877, 883 (9th Cir. 2000). In Nevada, attorneys' fees are not recoverable unless authorized by statute, rule, or agreement between the parties. First Interstate Bank of Nevada v. Green, 694 P.2d 496, 498 (Nev. 1985). As stated in its prior Order, the Court finds that NRS 90.660(1)(d) permits the award of reasonable attorney fees. NRS 90.660(1)(d) provides, in relevant part:

> "Upon tender of the security, the purchaser may recover the consideration paid for the security and interest at the legal rate of this State from the date of payment, costs and reasonable attorney's fees, less the amount of income received on the security."

Nev. Rev. Stat. § 90.660(1)(d). After analyzing the statute, the Court reaffirms that it permits Plaintiffs an award of attorneys' fees. However, while maintaining that there is no statutory authority for attorneys' fees of any amount, Defendants argue that if NRS § 90.660 were applicable, the Court did not apply its plain terms correctly. (See #152, at 15). Specifically, they argue that the total award should be the consideration paid for the security ($100,000) minus the income received on the security ($116,887.50), equating to "less than zero damages." Id. Defendants' argument fails for two reasons: (1) they have incorrectly applied the statute, and (2)

- 2 -

no income has been received from the security.

First, the statute does not define damages as the consideration paid minus the amount of income received. See Nev. Rev. Stat. § 90.660(1)(d). Instead, it specifies that the purchase may recover the consideration paid, interest, costs, and reasonable attorney's fees, less the amount of income received from the security. Id. Defendants' argument entirely overlooks the fact that interest, cost, and attorneys' fees are recoverable under the statute. (See #152, at 15). In essence, NRS § 90.660(1)(d) can be seen as a rescissory measure of damages. "Rescission is an equitable remedy which totally abrogates a contract and which seeks to place the parties in the position they occupied prior to executing the contract." Bergstrom v. Est. of DeVoe, 854 P.2d 860, 861 (Nev. 1993). While the Court initially concluded that rescission would not fully compensate Plaintiffs, it now finds that rescission under the statute constitutes a component of a cumulative, rather than an exclusive, recovery. This view is supported for by NRS § 90.700, which states that "[t]he rights and remedies provided by this chapter are in addition to any other rights or remedies that may exist at law or in equity[.]" See Nev. Rev. Stat. § 90.700(2) (encompassing NRS 90.660). As such, the Court finds that awarding relief under NRS § 90.660 would not preclude additional recovery for breach of contract based on fraud.

Second, while the Court agrees that any income received from the security must be deducted, it finds that no such income has been received. The only income Plaintiffs received came directly from their Affiliate positions, which were a distinct provision of the contract. (See #140, at 2) ("In addition to the 2% ownership interest in EnvyTV, Clayton Sampson represented to Beauregard, Smith, and Freeman that they would receive master Affiliate positions in the EnvyTV Affiliate multilevel hierarchy."). To date, Plaintiffs have received no income from their 2% ownership interest, which is the security at interest in this matter.

I. Costs

Pursuant to Rule 54 of the Federal Rules of Civil Procedure and the Local Rules of the District of Nevada, the prevailing party is entitled to reasonable costs associated with litigating the action. Fed. R. Civ. P. 54(d)(1); L.R. 54-1. In this district, a bill of costs must be filled with the court clerk within fourteen (14) days of judgment. L.R. 54-1. Generally, a bill of costs is

limited to those specific categories of costs and expenses enumerated in 28 U.S.C. § 1920. These enumerated costs include: (1) court clerk and marshal fees; (2) transcript costs; (3) witness disbursements; (4) copies of necessary documents obtained for use in the case; (5) docket fees; and (6) court appointed services. 28 U.S.C. § 1920. However, in Nevada, under NRS § 18.020, the prevailing party in any action seeking more than $2,500 in damages is entitled to recover any "reasonable and necessary expenses incurred in connection with the action, including reasonable and necessary expenses for computer services for legal research." See Nev. Rev. Stat. § 18.005.

Plaintiffs' bill of costs requests $15,679.13 in costs, which includes $400 in filing costs, $3671.75 in transcript costs, $3282.34 in copy costs, $353.84 in postal costs, and $7971.50 in research costs.[1] (#143-1, at 3-4). While Defendants object to most of these expenses (see #152, at 22-23), the Court nonetheless finds them allowable under NRS § 18.005. Thus, the Court concludes that $15,679.13 in costs is reasonable, necessary, and adequately proven based on Plaintiffs' supporting documentation.

## II. Interest

In awarding prejudgment interest, the Court initially determined that NRS § 99.040 would govern this calculation. (See #140, at 16). However, after analyzing the language of both statutes, the Court finds that NRS § 90.660 is the operative statute for determining interest owed on the consideration paid. Specifically, NRS § 90.660 states: "the purchaser may recover the consideration paid for the security and interest at the legal rate of this State from the date of payment[.]" Nev. Rev. Stat. § 90.660(1)(d). Since Plaintiffs wired transferred $100,000 to Defendants on December 14, 2018, the applicable interest rate of 5% applies until repayment.[2] Thus, the accrued interest as of September 20, 2024 (covering 2,108 days) at the legal rate of 5% is approximately $28,876.71, which amounts to roughly $13.69 per day.[3]

---

[1] Although Plaintiffs list $15,679.13 as the total amount of costs, the Court's calculation of the itemized list comes to $15,679.43. However, for convenience, the Court will proceed with the number provided by Plaintiffs. (See #143-1, at 3-4).

[2] All interest rates used in the Court's calculations are sourced directly from the state of Nevada at the following link: https://fid.nv.gov/Resources/Fees_and_Prime_Interest_Rate/.

[3] The Court utilized the following formula to determine interest owed: Interest Owed = (Consideration) x (Interest Rate/Days in a Year) x (Total Number of Days Elapsed).

### III. Reasonable Attorneys' Fees

Federal Courts sitting in diversity determine the reasonableness of attorneys' fees awarded under state law. PharMerica Mountain, LLC v. RCSRP Corp., No. 2:20-CV-00732-JAD-EJY, 2022 WL 594554, at *1 (D. Nev. Feb. 28, 2022). In determining the amount of fees to award, the Court is not limited to one specific approach; its analysis may begin with any method rationally designed to calculate a reasonable amount, so long as the requested amount is reviewed in light of the factors set for in Brunzell v. Golden Gate National Bank, 455 P.2d 31, 33 (Nev. 1969). Haley v. Dist. Ct., 273 P.3d 855, 860 (Nev. 2012). These factors include:

(1) the qualities of the advocate: his ability, his training, education, experience, professional standing and skill;

(2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation;

(3) the work actually performed by the lawyer: the skill, time and attention given to the work;

(4) the result: whether the attorney was successful and what benefits were derived.

Brunzell v. Golden Gate Nat. Bank, 455 P.2d 31, 33 (Nev. 1969). One such approach is the lodestar method, which involves multiplying the number of hours reasonably spent on the case by a reasonable hourly rate. Herbst v. Humana Health Ins. of Nevada, Inc., 781 P.2d 762, 764 (Nev. 1989). "There is a strong presumption that the lodestar rate is reasonable." Id. Finally, Local Rule 54-14 requires any motion for attorneys' fees to include, as relevant here, an attorney affidavit, a reasonable itemization and description of the work performed, a brief summary of 13 categories of information designed to elicit more information about the case and the work that the attorneys performed. L.R. 54-14(a)-(b).

Here, Plaintiffs are requesting $301,103.75 in attorneys' fees incurred while litigating this matter. (#142, at 6). Plaintiffs have included an affidavit and billing records showing that nine attorneys and three paralegals have worked on this matter at rates between $125 and $450 per hour. (#142-2, at 5; #142-3). Plaintiffs have calculated the lodestar amount by multiplying the

number of hours worked (940.80) by the applicable hourly rates. (See #142, at 8).

After reviewing Plaintiffs' motion, declaration, and billing records in light of both the Brunzell factors and Local Rule 54-14, the Court finds the rates charged and the amount of work performed to be reasonable given the circumstances of this case. While Defendants assert that the fee request is excessive and inflated, and at one point argue that this matter "is a relatively simple civil matter," the Court finds this argument unpersuasive. (See #152, at 19-22). In fact, this case was anything but simple. Spanning roughly four years, the matter involved extensive pretrial motion practice and discovery, including a motion to compel and motion for sanctions due to Defendants' failure to comply with the Court's Order, culminating in a three-day bench trial in which Plaintiffs prevailed. As such, applying the Brunzell factors to the circumstances of this case, the Court finds the requested fees to be reasonable. Therefore, the Court awards $445,659.59 in statutory damages under NRS § 90.660, with interest on the consideration paid accruing until repayment.

### B. Damages

#### I. Compensatory Damages

In addition to attorneys' fees and costs, the Court also determined that Plaintiffs are entitled to compensatory damages resulting from Defendants' breach of contract. (#140, at 16). It is well established that in contracts cases, compensatory damages are awarded to make the aggrieved party whole and should place the plaintiff in the position he would have been in had the contract not been breached. Rd. & Highway Builders v. N. Nev. Rebar, 284 P.3d 377, 382 (Nev. 2012). This includes awards for lost profits or expectancy damages. Id. "[While] compensatory damages need not be determined with certainty, they may not be based upon 'mere speculation or guess.'" Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 824 (9th Cir. 2001).

Initially, the Court concluded that Plaintiffs were entitled to entitled to $121,380 in compensatory damages, with interest, arising from unpaid Affiliate earnings from February 22, 2020, through October 11, 2021.[4] (#140, at 16). However, after reviewing Plaintiffs' Trial

---

[4] The Court's recognizes that its prior Order stated that damages would be calculated starting from February 2, 2018; however, it now clarifies its intention to set the start date of damages as February 22, 2018. See id.

- 6 -

Exhibit #70—the earnings record generated by Multisoft corresponding to Plaintiffs' EnvyTV Affiliate earnings—the Court finds that compensatory damages should be calculated from the dates listed in that document: February 22, 2020, through July 10, 2021.[5] Based on this document, Plaintiff John Smith should have received $51,354 in earnings, and Plaintiff Mary Beauregard should have received $50,692, resulting in a total of $102,046. As the Court finds that this value is sufficiently supported by evidence in the record, it awards Plaintiffs $102,046 in compensatory damages for unpaid Affiliate commissions for the period from February 22, 2020, through July 10, 20201.

Next, while the Court initially found that Plaintiffs are entitled to $353,000 in compensatory damages for unpaid Affiliate earnings from October 12, 2021, through October 11, 2028, upon reviewing the record, the Court finds that this award would require it to venture into the realm of speculation, which it cannot do. See Silver Sage Partners, Ltd., 251 F.3d at 824. However, the Court finds that evidence before it supports a further finding that Plaintiffs should be awarded $182,671.28 in compensatory damages for unpaid Affiliate earnings from July 11, 2021, through December 31, 2023.

First, Plaintiffs' Trial Exhibit #87, which was authenticated and received into evidence at trial, shows a detailed breakdown of Defendants' Chase banking statements for all of 2021. Within these statements, numerous monthly deposits are coded with the same transaction descriptions: "Cmsreleasesec" and "EnvyTV."[6] These statements show that after terminating Plaintiffs' Affiliate positions, Defendants continued to receive substantial income from EnvyTV subscriptions. For instance, in the July 2021 statement, there are approximately 30 deposits with this transaction description, totaling $61667.10. In August 2021, there were 32 deposits, totaling $59003.70. In September 2021, there were 30 deposits, totaling $54429.79. In October 2021, there were 30 deposits, totaling $49765.20. In November 2021, there were 31 deposits, totaling $56779.40. Finally, in December 2021, there were 31 deposits, totaling $55736.86.

---

[5] Plaintiffs' Trial Exhibit #70 reflects the earnings their Affiliate positions would have earned from February 22, 2020, through July 10, 2021, had they not been disabled. (See #163, at 155). During trial, this exhibit was authenticated and admitted into evidence. See id. at 155-157.

[6] During trial, Defendant Clayton Sampson testified that "CMS" refers to "deposits for EnvyTV subscriptions and affiliates from [their] credit card servicing company." (#164, at 43-44).

Using basic math, the Court determined that, together, Plaintiffs were earning approximately $202.07 per day in Affiliate commissions. This was calculated by dividing the total income reported on the Multisoft earnings record by the number of days in that entire period, including the end date. Thus, over a period of 505 days, totaling $102,046 in unpaid commissions, Plaintiffs should have earned approximately $202.07 per day combined. Taking this a step further, and considering that EnvyTV continued to generate income, as evidenced by the Chase bank statements for this period, the Court was able to determine Plaintiffs' future lost profits. For the period from July 11, 2021, through December 31, 2021, at $202.07 per day for 174 days, Plaintiffs' lost profits amount to $35,160.18.

For the period from January 1, 2022, through December 31, 2023, at $202.07 per day for 730 days, Plaintiffs' lost profits amount to $147,511.10. The Court arrived at this figure by examining three sets of documents: (1) Defendants' Chase banking statements from January 1, 2022, through June 30, 2022;[7] and (2) Defendants' profit and loss statement for January 2019 through December 2023; and (3) additional Chase bank statements from Defendants. (See #154-2; #160-1). The profit and loss statement and additional Chase bank statements were submitted as required by the Court's prior Order. (See #140, at 18).

As with the previous statements, the Chase bank statements for January 1, 2022, through October 31, 2023, detail numerous deposits from EnvyTV. (See #160-1). Therefore, the Court has no hesitation in concluding that Plaintiffs would have received their average daily commission as EnvyTV continued to generate income. However, Defendants' submitted chase bank statements don't include any statements beyond October 31, 2023, relating to EnvyTV. See id. Thus, for the remaining time period, the Court referred to Defendants' profit and loss statement, which indicates that from January 2019 through December 2023, a total of $1,388,282.62 was paid out in Affiliate commissions, averaging approximately $277,656.52 per year. (#154-2, at 2). The Court finds that these documents sufficiently demonstrate that EnvyTV was highly profitable during this time period, and thus, Plaintiffs are entitled to their share of

---

[7] Although Plaintiffs never moved to have Defendants' January 1, 2022, through June 30, 2022, Chase bank statements admitted into evidence at trial, the Court finds no error in reviewing them, as Defendants should have disclosed them in their accounting supplement. (See #140, at 18).

these profits. As such, the Court finds that Plaintiffs are entitled to a total amount of $284,717.28 in compensatory damages for unpaid Affiliate commissions from February 22, 2020, through December 31, 2023.

## II. Interest

Furthermore, under NRS § 99.040, Plaintiffs are entitled to interest on their $284,717.28 in compensatory damages. See Schoepe v. Pac. Silver Corp., 893 P.2d 388, 389 (Nev. 1995) ("NRS 99.040 authorizes the award of prejudgment interest."). NRS § 99.040 states: "When there is no express contract in writing fixing a different rate of interest, interest must be allowed at a rate equal to the prime rate at the largest bank in Nevada, as ascertained by the Commissioner of Financial Institutions, on January 1 or July 1, as the case may be, immediately preceding the date of the transaction, plus 2 percent, upon all money from the time it becomes due[.]" Nev. Rev. Stat. § 99.040(1). "The rate must be adjusted accordingly on each January 1 and July 1 thereafter until the judgment is satisfied." Id. "[P]rejudgment interest should be calculated for 'all money' owed under the contract from the date it becomes due until the date it is paid or an offer of judgment is made." State Drywall, Inc. v. Rhodes Design & Dev., 127 P.3d 1082, 1086 (Nev. 2006) (applying NRS 99.040 to determine interest owed).

Applying the statute, Plaintiffs are entitled to interest on each individual commission payment from the date it becomes due until it is paid. However, applying interest on every individual commission payment places a significant burden on the Court. To simplify the calculation, the Court totaled the payments that should have been received each month, using the last day of the month as the due date, and applied the specific interest rate to this total. The Court also considered the varying interest rates applicable to each payment due. See Nev. Rev. Stat. § 99.040(1) ("The rate must be adjusted accordingly on each January 1 and July 1 thereafter until the judgment is satisfied."); Schoepe v. Pac. Silver Corp., 893 P.2d 388, 389 (Nev. 1995) ("This court has held that the date from which the money becomes due is to be determined by the trial court."). The Court calculated interest over 47 separate unpaid Affiliate commissions, totaling $284,717.28, for the period from February 22, 2022, through December 31, 2023, with the interest period spanning from February 29, 2020, to September 20, 2024. As such, the Court

finds that Plaintiffs are entitled to $63,393.60 in interest, which will continue to accrue until the judgment is satisfied. See State Drywall, Inc., 127 P.3d at 1082.

### III. Punitive Damages

Finally, as stated in its prior Order, the Court finds that Plaintiffs are entitled to recover punitive damages from Defendants pursuant to NRS § 42.005. (#140, at 14, 16). NRS § 42.005 provides, in relevant part:

> "[I]n an action for the breach of an obligation not arising from contract, where is it proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the compensatory damages, may recover damages for the sake of example and by way of punishing the defendant."

Nev. Rev. Stat. § 42.005(1). However, punitive damages may not exceed three times the amount of compensatory damages if the amount of compensatory damages is $100,000 or more. Id. Defendants offer two arguments against awarding punitive damages: (1) "[a] punitive damage award is not supported by this Court's findings of fact and law," and (2) Nevada law requires that a subsequent proceeding take place to determine the amount of such damages to be assessed. (#153, at 8-9). While the Court rejects Defendants' first argument, it finds their second argument to be meritorious.

First, the Court's prior Order held that Defendant Clayton Sampson is guilty of common law and securities fraud, while Defendant Elisha Sampson is guilty of securities fraud. (See #140, at 9, 12, 14-15). The Court sees no need to reiterate the evidence and legal analysis that led to these conclusions, as they are fully detailed in its prior Order. See id. However, the Court will emphasize that punitive damages are warranted due to Defendants' fraudulent conduct. Second, the Court concurs that a hearing to assess the appropriate amount of punitive damages is required under NRS § 42.005. See Nev. Rev. Stat. § 42.005(3) ("If such damages are to be assessed, a subsequent proceeding must be conducted before the same trier of fact to determine the amount of such damages to be assessed."). As such, a hearing will be scheduled to determine the amount of punitive damages to be assessed. During this hearing, Defendants will have the opportunity to present evidence regarding their financial condition. See Nev. Rev. Stat. § 42.005(4).

**C. Default Judgment**

Lastly, the Court must address Plaintiffs' Motion for Default Judgment against Defendant EnvyTV, LLC. (#112). On August 15, 2022, the Clerk of the Court entered "Default" against EnvyTV, LLC for failing to plead or otherwise defend in the present matter. (See #62). A corporation may appear in federal court only through licensed counsel. F.D.I.C. v. Hyde Park Apartments, 81 F.3d 167 (9th Cir. 1996). As counsel has only been obtained for Defendants Clayton Sampson and Elisha Sampson, a default judgment against Defendant EnvyTV on all claims is appropriate. Therefore, Plaintiffs' motion is granted, and judgment will be entered against Defendant EnvyTV, LLC.

II.     Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Default Judgment (#112) is **GRANTED**. The Clerk of the Court will enter an **AMENDED JUDGMENT** with the following language: **IT IS HEREBY ORDERED** that, consistent with these findings and conclusions, judgment shall be entered in favor of Plaintiffs against Defendants EnvyTV, Elisha Sampson, and Clayton Sampson in the amount of **$810,445.47**. Furthermore, since Defendant EnvyTV is the alter ego of Defendants Clayton Sampson and Elisha Sampson, they are jointly and severally liable for the entire judgment amount:

1. $100,000 in consideration paid.
2. $28,876.71 in interest on the consideration paid as of September 20, 2024, which amounts to approximately $13.69 per day until repaid.
3. $15,679.13 in costs.
4. $301,103.75 in attorneys' fees.
5. $284,717.28 in compensatory damages for unpaid Affiliate commissions from February 22, 2020, through December 31, 2024.
6. $63,393.60 in interest on the compensatory damages owed, which will continue to accrue until the judgment is fully satisfied.
7. $8,175 in arbitration expenses and $8,500 for discovery abuse.
8. Punitive damages as assessed by the Court in a forthcoming hearing.

Dated this 23rd day of September 2024.

_____
Kent J. Dawson
United States District Judge