UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARY JANE BEAUREGARD and JOHN HUGH SMITH,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>CLAYTON SAMPSON, et al.,<br><br>　　　　　　　　　　　　Defendants. | Case No. 2:20-cv-02123-KJD-DJA<br><br>**ORDER on AMOUNT of PUNITIVE DAMAGES and MOTION to COMPEL (ECF No. 182)** |

After a three-day bench trial and supplemental briefing, the Court awarded damages and entered judgment in the amount of $810, 445.47. (ECF Nos. 168, 169). The Court found that punitive damages should be awarded and afforded the parties a hearing as required under NRS § 42.005. See Nev. Rev. Stat. § 42.005(3) ("If such damages are to be assessed, a subsequent proceeding must be conducted before the same trier of fact to determine the amount of such damages to be assessed."). The hearing was held on February 11, 2025. (ECF No. 180). Supplemental briefing was filed on March 31, 2025. (ECF Nos. 186, 187). The Court will now determine the amount of punitive damages to be awarded.

Additionally, before the Court is Defendants' Request to Compel Plaintiffs to Clarify Propriety of Legal Research Expenses (ECF No. 182). Plaintiffs filed a response in opposition. (ECF No. 183).

**I.   Standard for a Punitive Damages Award**

The Court found that Plaintiffs are entitled to recover punitive damages from Defendants pursuant to NRS § 42.005. (ECF Nos. 140, at 14, 16 and 168 at 10). NRS § 42.005 provides, in relevant part:

> "[I]n an action for the breach of an obligation not arising from contract, where is it proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the

compensatory damages, may recover damages for the sake of example and by way of punishing the defendant."

Nev. Rev. Stat. § 42.005(1). Once the district court makes a threshold determination that a defendant's conduct is subject to civil punishment, the decision to award punitive damages rests entirely within the trier of fact's discretion. Olivero v. Lowe, 995 P.2d 1023, 1028 (Nev. 2000). In a bench trial the trier of fact is the presiding judge. Wood v. Safeway, Inc., 121 Nev. 724, 731 n. 19 121 P.3d 1026, 1031 (2005).

In Bongiovi, the Supreme Court of Nevada stated that the relevant considerations of a fair, just, and reasonable punitive damage award are: the financial position of the defendant, culpability and blameworthiness of the tortfeasor, vulnerability and injury suffered by the offended party, the extent to which the punished conduct offends the public's sense of justice and propriety, and the means which are judged necessary to deter future misconduct of this kind. Bongiovi v. Sullivan, 138 P.3d 433, 451 (2006). However, punitive damages may not exceed three times the amount of compensatory damages if the amount of compensatory damages is $100,000 or more. Countrywide Home Loans, Inc. v. Thitchener, 192 P.3d 243, 256 (Nev. 2008).

The Nevada Supreme Court regularly upholds punitive damages below this maximum threshold in the face of claims that the awards violated due process. In Wyeth v. Rowatt, for instance, a punitive damages award of less than three times the compensatory award was "well within the accepted ratios." 244 P.3d 765, 785 (2010). And in, Evans v. Dean Witter Reynolds, Inc., the Nevada Supreme Court found that punitive damages award of $6 million was not excessive because it was less than three times the compensatory damages award and "did not annihilate" either defendant because the damages were a small portion of the net worths of either party. 116 Nev. 598, 614, 5 P.3d 1043, 1053 (2000).

## II.     Factors the Court Considered in Awarding Punitive Damages Award

### A.     Discrepancies in Testimony

Discrepancies in the financial standing of Defendants has been caused by the contradictory testimony of Defendants and the failure of Defendants to produce complete records during discovery and in response to Court orders as described below. For example, Elisha Sampson argued that a judgment involving fraud may affect her ability to sell life insurance

policies. (Trial Tr. 51:15–24, February 12, 2025). But when questioned by Plaintiffs' counsel as to whether she had been able to sell life insurance in the last year, Elisha testified that she had done so. (Trial Tr. 65:66:2, February 12, 2025). Additionally, evidence was presented at the January 2024 trial showing that Clayton Sampson filed a bankruptcy petition on December 14, 2018. (Plaintiff's Trial Ex. 7). This was same date on which the Sampsons were discussing an investment in EnvyTV with the Plaintiffs. In his bankruptcy petition, Clayton Sampson stated, under penalty of perjury, that his estimated assets were worth between $0 and $50,000 as of December 14, 2018. (ECF 163; Trial Tr. 203:19-204:7; Jan. 2, 2024). Later during trial, Clayton Sampson contradicted the sworn statements made in his 2018 bankruptcy petition, testifying that the value of his crypto holdings was "in the neighborhood" of $200,000 or $300,000 at the time EnvyTV was formed in December 2018. (ECF 164; Trial Tr. 133:16-134:10; Jan. 4, 2024).

        Clayton Sampson similarly provided contradictory testimony regarding his crypto holdings at the February 2025 punitive damages hearing. On direct examination, Clayton Sampson testified that his crypto account balance as of the date of the hearing was 1,273.31 and this was the extent of his crypto holdings. (Trial Tr. 93:12-93:25; Feb. 12, 2025). Later, on cross-examination, Clayton Sampson confirmed that his prior testimony regarding 1,273.31 in his crypto account referred to the number of units of crypto held by Mr. Sampson, not the value of his crypto holdings. (Trial Tr. 130:17-131:3; Feb. 12, 2025). Notwithstanding this testimony, prior to the conclusion of the hearing, the Court asked Clayton Sampson to clarify his testimony regarding his crypto holdings. In response to the Court's inquiry, Clayton Sampson contradicted his prior sworn testimony and testified that his reference to 1,273.31 in his crypto account referred to the dollar value of his crypto holdings.

        Further, in support of their purported inability to pay the judgment, Defendants repeatedly offer conclusory arguments. When asked if a fraud judgment would affect his ability to obtain employment, Clayton Sampson simply testifies "100 percent," without explaining how or if he had encountered any such difficulty. (Trial Tr. 87:2-11, February 12, 2025). And when asked if he could pay an $800,000 judgment, Mr. Sampson testified "zero," without providing evidence or any factual support for this response, aside from the fact that he paid for an attorney

1  with a credit card. (Trial Tr. 87:10-21, February 12, 2025).

2  Thus, the conduct of Defendants during discovery, at trial, and during post-trial discovery and hearings suggests that the Court should award a larger amount of punitive damages. The failure of Defendants to be forthright and clear in explaining their financial situation and accounting for the millions of dollars gathered during their scheme buttress the Court's underlying finding of fraud and its determination that punitive damages should be awarded.

### B.     Incomplete Accounting

In response to the Court's January 31, 2024 Order for a full accounting, Defendants filed Accounting Disclosures on March 22, 2024. (ECF No. 154). Defendants' Accounting Disclosures consisted of the following: (i) Wells Fargo statements for EnvyTV Account No. ----8239 for the period November 2023-February 2024 (ECF 154-1); (ii) a Clayton and Elisha Sampson Profit and Loss Statement for the period January 2019-February 2024 (ECF 154-2); (iii) the 2022 EnvyCares, LLC Partnership Tax Return (ECF 154-3); (iv) the 2022 EnvyTV, LLC Corporation Tax Return (ECF 154.-4); (v) the 2022 Tax Return filed by Clayton and Elisha Sampson (ECF 154-5); and (vi) an Assets and Liabilities Net Worth Worksheet dated August 10, 2023 (ECF 154-6).

On March 29, 2024, after the deadline for submitting their accounting, Defendants filed Supplemental Accounting Disclosures (ECF 160) that include Chase Bank statements for EnvyCares account ending 6882 for the period July 2022 through March 2023 and Chase Bank Statements for EnvyTV account ending 1092 for the period July 2022 through October 2023 (ECF 160-1).

However, Defendants failed to produce 2021 corporate and personal tax returns. At the February 12, 2025 hearing, Elisha Sampson testified that she was sure that the Sampsons filed a 2021 personal tax return. (Trial Tr. 27:19-27:25; Feb. 12, 2025). Similarly, Ms. Sampson testified that EnvyTV, LLC filed a 2021 tax return. (Trial Tr. 42:7-42:8; Feb. 12, 2025). Despite this testimony, the Defendants failed to produce the EnvyTV, LLC 2021 tax return or their 2021 personal tax return in response to the Court's order to provide an accounting. Nor has the 2021 EnvyCares, LLC tax return been produced. (Plaintiffs' Trial Exhibit 46).

In response to the Court's order for an accounting, the Sampsons produced a Profit and Loss Statement titled "Clayton and Elisha Business Activity" for the period January 2019- February 2024. (ECF 154-2). This document was admitted into evidence as Plaintiffs' Exhibit 94. The P&L Statement reflects income of almost $4.8 million, the majority of which is from EnvyTV subscriptions. Id. Other items in the P&L income section refer to income generated from other Envy-related entities such as EnvyCares and EnvyConnect. There is no reference to income generated from business opportunities Clayton Sampson has publicly promoted through an online platform called "EnvySolutions International." (Plaintiffs' Trial Exhibit 53). Through that platform, Clayton Sampson promoted various earnings opportunities known by names such as "EtherConnect," "D.AI.SY," "Omega Digital" and "Meta Trader 5." Id. The P&L Statement does not reflect any income from these other Envy-related business ventures.

The P&L Statement further reflects "costs of goods sold" consisting of more than $1.3 million in EnvyTV Affiliate Commissions. Evidence at trial showed that both Clayton and Elisha Sampson received significant EnvyTV Affiliate commissions, and their commissions increased when they demoted or decreased the Plaintiffs' Affiliate positions. (ECF No. 140, Page 5, ¶ 40). Yet the P&L Statement does not reflect any EnvyTV Affiliate commissions paid to Clayton and Elisha Sampson.

Elisha Sampson testified during the January 2024 trial that the references to "Clayton Draw" and "Lisa Draw" in the Sampsons' 2019 Profit and Loss Statement referred to amounts paid to the Sampsons in addition to EnvyTV Affiliate commissions they received. (ECF 165, Trial Tr. 159:5-159:15; Jan 3, 2024). However, at the punitive damages hearing, Clayton Sampson testified that he did not receive EnvyTV Affiliate commissions and that his only income from the company was in the form of draws. (Trial Tr. 116:4-116:15; Feb. 12, 2025). Mr. Sampson further disputed Elisha Sampson's prior trial testimony that the "draws" reflected on the Profit and Lost Statement were in addition to EnvyTV Affiliate commissions received by the Sampsons. (Trial Tr. 128:6-128:25; Feb. 12, 2025).

Finally, in their accounting disclosures, Clayton Sampson and Elisha Sampson provided an unverified net worth statement purporting to reflect their assets and liabilities. (ECF No. 154-

6). The net worth statement was admitted into evidence at the punitive damages hearing as Plaintiffs' Exhibit 98. The net worth statement is dated August 10, 2023 and it therefore does not purport to reflect the Sampson's assets and liabilities as of the date of the accounting disclosures ordered by this Court. In addition, the net worth statement does not reflect any digital currency or investment holdings, despite Clayton Sampson's testimony at trial that he achieved significant wealth trading cryptocurrency, and despite evidence at trial that Mr. Sampson promoted multiple digital earnings opportunities through Envy-related business ventures and his social media post claiming to be a billionaire. (ECF 140, Page 6, ¶¶ 55-56); (Plaintiff's Trial Exhibit Nos. 53-54).

### C.     Summary

Here, there is evidence of income of at least $4.8 million just from EnvyTV subscriptions. There is extensive testimony and evidence of cryptocurrency that has not been fully accounted for. Further, Mr. Sampson routinely represented to others that he was a billionaire. There is no doubt that during the scheme resulting in the judgment against Defendants, that Defendants profited from their fraud, controlled the assets received, and used ostentatious displays of wealth to attract new investors. There has been little to no acceptance of responsibility for their actions. In addition to the financial position of Defendants, the culpability and blameworthiness in their actions leading to the civil claims at issue here counsels the Court to award significant punitive damages to punish Defendants. Finally, the underlying conduct, fraud and securities fraud, offends the public's sense of justice and propriety. Therefore, a punishing award of punitive damages is necessary to deter future misconduct of this kind. Accordingly, the Court orders an award of punitive damages in the amount of $750,000.00, nearly two times the amount of compensatory damages ($100,000.00 in consideration + $284,717.28 unpaid affiliate commissions). See Amended Judgment (ECF No. 169).

### III.    Request to Compel Plaintiffs to Clarify Propriety of Legal Research Expenses

Essentially, Defendants seek post-judgment discovery regarding the factual basis for the Court's award of computerized legal research expenses. First, the Court denies Defendants' motion because it is partially premised upon the notion that Plaintiff's cannot recover such costs. However, the prevailing party in any action seeking more than $2,500.00 in damages may, under

Nevada law, recover any "reasonable and necessary expenses for computerized services for legal research." NRS § 18.005; Coker Equip. Co. v. Wittig, 366 Fed. Appx. 729, 733 (9th Cir. 2010). Further, non-taxable costs may be recovered along with attorney's fees pursuant to Federal Rule of Civil Procedure 54(d)(2). This amount includes computerized research expenses. See Copper Sands Homeowners Assoc., Inc. v. Copper Sands Realty, LLC, 2017 WL 4349219 at *5 (D. Nev. Sept. 29, 2017) (citing D. Nev. LR 54-11). Thus, the Court's award of the fees based on the evidence that they were reasonable and necessary was proper.

Second, the Court denies the motion as untimely. Amended Judgment was entered on September 23, 2024. (ECF No. 169). Defendants did not raise the issue until counsel made an oral motion at the February 11, 2025 hearing on punitive damages. (ECF No. 180). Thus, the motion to compel is made outside the discovery period, after the trial has concluded, and after the Court has entered judgment. Herndon v. City of Henderson, 507 F. Supp. 3d 1243, 1247 (D. Nev. 2020) ("A motion to compel filed after the dispositive motion deadline is presumptively untimely because continuing to entertain discovery matters at that juncture interferes with the advancement of the case to the merits phase") (citing Gray v. Cox, No. 2:14-cv-01094-JAD-PAL, 2016 WL 4367236, at *3 (D. Nev. Aug. 12, 2016)). Defendants have failed to show good cause for failing to raise the issue in a timely manner, waiting until five months after an amended judgment had been entered. Accordingly, the Court denies the motion.

**IV.     Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Request to Compel Plaintiffs to Clarify Propriety of Legal Research Expenses (ECF No. 182) is **DENIED**.

**IT IS FURTHER ORDERED** that the Court awards punitive damages in the amount of $750.000.00.

The Clerk of the Court will enter a **SUPPLEMENTAL JUDGMENT** for an award of punitive damages with the following language: **IT IS HEREBY ORDERED** that, consistent with these findings and conclusions, supplemental judgment for punitive damages shall be entered in favor of Plaintiffs against Defendants EnvyTV, Elisha Sampson, and Clayton Sampson in the amount of **$750,000.00**. Furthermore, since Defendant EnvyTV is the alter ego

- 7 -

of Defendants Clayton Sampson and Elisha Sampson, they are jointly and severally liable for the entire supplemental judgment amount for punitive damages.

DATED: September 29, 2025

_____
Kent J. Dawson
United States District Judge